## LEARNED *vs.* TALLMADGE.

N., who died in 1817, by his last will and testament, gave and devised certain real estate to W. N. S. and H. O., and their heirs, and to the survivor and his heirs, in trust to pay over the rents and profits for the sole and separate use of A., the wife of J. L. S., during the joint lives of A. and her husband; and in case J. L. S. should survive A. then in trust, during his lifetime, for their children; and in the event of J. L. S. surviving his children, then upon the further trust to pay over the rents and profits to him during his life. And he gave full power and authority to J. L. S., by last will and testament, to convey and dispose of the said real estate, or any part therof, and to limit and appoint the uses thereof in such manner as he might deem proper; and in case of his dying without having made such appointment, the land was devised to the issue of J. L. S. living at the time of his death. J. L. S. had two children, F. N. S. and R. S. On the 3d of March, 1840, a deed was executed by the trustees, of the first part, and J. L. S. and A. his wife and F. N. S. of the second part, to R. S. of the third part, by which the parties of the first and second parts conveyed to the party of the third part, in fee, a portion of the said real estate. The deed also contained a covenant by which J. L. S. covenanted and agreed that he could not and would not make any disposition of the premises thereby conveyed, by any last will and testament, and that all his right, title and interest in the premises thereby conveyed, and all his beneficiary interest in the premises, was forever extinguished, relinquished and ended. J. L. S. died in 1852, leaving no issue him surviving; his sons having previously died without issue. He left a will, by which, after referring to the power contained in the will of N., he gave and devised to his wife, A., in fee, the real estate so devised in trust by N. A. subsequently conveyed the same to W. J. N., who conveyed the land to the plaintiff.

*Held* 1. That upon the death of N. the title to the land vested in the trustees during the life of J. L. S. with remainder over to his issue living at the time of his death, subject nevertheless, to the power of appointment contained in the will. That as J. L. S. left no issue living at the time of his death, the title to the premises, upon his failure to appoint, would have vested in the heirs at law of N. And that J. L. S. having made an appointment in the manner authorized by the will, upon his death the title to the premises became vested in his widow as appointee, unless by the deed of March 3, 1840, he had divested himself of the right to make such appointment

2. That J. L. S. although the person for whose benefit the property was intended, in fact never had any beneficial interest in it. That he was therefore a stranger to the title, having no legal or equitable interest in it. And that the power conferred upon him belonged to that class styled powers *simply collateral*, a peculiarity of which class is that they can neither be barred nor extinguished by any act of the party in whom they are vested.

3. That the power of appointment given to J. L. S. was not extinguished by his executing the deed of March 3, 1840, but was properly exercised by his will, in favor of his wife.

4. That the deed executed by A., the widow of J. L. S., to W. J. N., was valid, and conveyed the premises to the grantee.

5. That A. was not estopped from taking under the will of her husband by having executed the deed of March 3, 1840; that deed operating merely to release to the grantee all the interest she then had in the land.

6. That the covenant of J. L. S., in that deed, that he could not, and would not, dispose of the premises by will, was to be regarded as a *personal,* rather than a *real* covenant;—as concerning J. L. S. personally, and not as owner of the land. That it did not affect a person claiming title to the premises under a subsequent conveyance from R. S. the son of J. L. S.

Where one enters into possession of premises under a conveyance giving him an estate for the life of another, and his estate ceases by the termination of that life, he then, being lawfully in possession, becomes the tenant by sufferance of the person entitled to the reversion, and cannot set up the defense of adverse possession, to an ejectment brought by one claiming title under a conveyance from the reversioner.

THIS action was brought to recover the possession of two parcels of land, together containing about 240 acres, situate in the towns of Coeymans and Bethlehem, in the county of Albany.

The facts which appeared upon the trial, are as follows : Francis Nicoll, who was the grandfather of John L. Sill, died in 1817, seised and possessed of the lands in question, and other lands adjoining. He left a will, which was duly proved on the 5th of January, 1818. The will contained the following devise: "I give and devise unto my grandson William R. Sill and Henry A. Oothout, Esquires, and their heirs, and the survivor and his heirs, all that part of my real estate in the town of Bethlehem and Coeymans, (describing a tract of land which includes the premises in question,) to have and to hold the said real estate upon the following trusts, and for the following uses and purposes, to wit: In trust to pay over the rents and profits thereof, for the sole and separate use of Abigail, the wife of my grandson, John L. Sill, during the joint lives of the said Abigail and the said John L. Sill; and in case the said John L. Sill shall survive

the said Abigail, then in trust, during the lifetime of the said John L. Sill, for the children or child of the said John L. Sill, lawfully begotten, in which last case, the said trustees shall pay over the rents, profits and proceeds of the said estate to the said John L. Sill, which shall be under his sole control, direction and management, for the maintenance, education and support of such children or child; and in the event of the said John L. Sill surviving such children or child, then I give and devise the said real estate to the said William N. Sill and Henry Oothout, and their heirs, and the survivor of them and his heirs, in trust to pay over the rents and profits thereof to the said John L. Sill during his lifetime. And I do hereby give full power and authority to the said trustees and their heirs, and the survivor of them and his heirs, at any time during the continuance of the trust hereby created in them, and during the life of the said John L. Sill, to cut down any timber or wood upon the said premises heretofore devised, and to sell the same, and upon such sale I hereby direct that the proceeds of the said sale shall be paid to the said John L. Sill, for his sole use. *Item. I hereby give and devise to the said John L. Sill, full power and authority, by last will and testament under his hand, executed in the presence of three witnesses, in due form of law, to convey and dispose of all the said real estate, or any part thereof, and to limit and appoint the uses thereof, in such manner as he may deem proper. But if the said John L. Sill shall die without having made such last will and testament, and appointment as aforesaid, then, and in that case, I hereby give and devise the said real estate to the issue lawfully begotten of the said John, living at the time of his death, and his, her, or their heirs, any posthumous child or children to take as such issue."*

John L. Sill had two children, Francis N. Sill and Richard Sill. On the 3d day of March, 1840, a deed was executed by William N. Sill and Henry A. Oothout, of the first part, and John L. Sill and Abigail his wife, and Francis N. Sill, of the second part, to Richard Sill, of the third part, whereby, after

reciting the provisions of the will above set forth, and that Richard Sill and Francis N. Sill were the only children of John L. Sill, and that John L. Sill and his wife, and their children, were the only persons in being who were beneficially interested in the trust estate, and that the trustees, at the request and by the desire of all the *cestuis que trust,* had consented to release and convey to Richard Sill a portion of the trust estate, the parties of the first and second parts did convey, &c. to the party of the third part, his heirs and assigns forever, all &c., (describing the premises in question.) The deed contained a covenant, as follows : "And the said John L. Sill, one of the said parties of the second part, hereby, as well by means of his being a party hereto as by his express declaration, covenants and agrees that he cannot and will not make any disposition of the premises hereby conveyed by any last will and testament, and that all his right, title and interest, in the said premises hereby conveyed, and all his beneficiary interest in the said premises is forever extinguished, relinquished and ended."

On the 13th of November, 1841, John L. Sill and Richard Sill executed their bond to Alfred A. Wood, conditioned for the payment of $8000, in three years from the date thereof, with interest, and to secure this payment, Richard Sill at the same time executed to Wood a mortgage upon the premises in question. This bond and mortgage was assigned by Wood to Norman Peck, on the 8th of February, 1842.

A suit for the foreclosure of the mortgage was brought by Peck, in the court of chancery, and on the 3d day of December, 1844, the usual decree in such cases was obtained, by virtue of which the premises were sold at public auction, on the 20th day of March, 1845, to Erastus Corning, for the sum of $2820, and on the 5th day of June following he received therefor the usual master's deed. On the 12th day of March, 1847, Corning released the premises to the defendant in this action. The consideration expressed in the deed was $2868.10.

John L. Sill died on the 26th of November, 1852, leaving

no issue him surviving, both his sons having previously died without children. He left a will, bearing date the 15th of May, 1852, which was proved and recorded on the 5th of February, 1853. By this will, after referring to the power contained in the will of Francis Nicoll, he gives and devises to his wife Abigail L. Sill, her heirs and assigns forever, all &c., (the premises in question.)

On the 7th of December, 1852, Abigail L. Sill conveyed the same premises by a deed with full covenants, to William J. Noyes. The consideration expressed in the deed was $2415.75.

On the same day, Noyes executed to Mrs. Sill an agreement whereby, after reciting the deed for the consideration mentioned, " being the present value of an annuity during the residue of her life at the rate of $250 per annum," he, Noyes, agreed to pay to her, during her natural life, the full sum of $250 annually, *to commence from the day of the date of possession and entry.*

On the 17th of January, 1853, Noyes, by a warranty deed, conveyed the premises to the plaintiff in this action. The connsideration expressed in the deed was $4000. The defendant offered to prove, on the trial, that the only consideration for the conveyance from Noyes to the plaintiff was a note for $1000. The evidence was excluded.

On the 23d of January, 1854, the plaintiff served upon the defendant a notice to quit the premises, and on the 21st of July following this action was commenced. The plaintiff alleged in his complaint that he had the lawful title and was seised of the premises; that the defendant was in possession and *unlawfully* withheld such possession. He claimed judgment for the recovery of the possession, and damages for the unlawful withholding of the possession. The defendant denied the allegations in the complaint. The action was tried at the Albany circuit, in October, 1854, before Mr. Justice HARRIS, without a jury

*W. L. Learned,* for the plaintiff.

*S. W. Tallmadge,* defendant, in person.

*By the Court,* HARRIS, J. The purpose of Nicoll, the testator, in reference to the premises in question, is easily discerned. He intended that his grandson, Sill, should have every benefit which could be derived from their use, during his life, and the unrestricted disposition of them, at his death. All the power withheld was that of alienation during his life. Hence, the care with which he provided that Sill and his family should have the rents and profits of the property in the various contingencies to which they were subject. He went further, and authorized the trustees to impair the value of the freehold itself, by cutting off the wood and timber, for the benefit of Sill.

The object of the testator was, to some extent, defeated by the deed of the 3d of March, 1840. He did not mean that any thing should be done which could have the effect to deprive the object of his bounty of the rents and profits of these premises while he lived. He protected him against his own inclination to part with the premises by confining his power to a devise, which, from its nature, could only take effect upon his death. Until then, the disposition he might at any time feel inclined to make of the property would remain revocable. And yet, by procuring the trustees to unite in the deed, he did succeed in defeating the purpose of the testator and depriving himself and his family of the use of the premises for the last eight or ten years of his life.

Upon the death of Nicoll, the title to the premises vested in the trustees during the life of John L. Sill, with remainder over to his issue living at the time of his death, subject nevertheless to the power of appointment contained in the will. As Sill left no issue living at the time of his death, the title to the premises, upon his failure to appoint, would have vested in the heirs at law of Nicoll. Having made an appointment in the manner authorized by the will creating the power, there can be no doubt that upon the death of John L. Sill, the title to the premises became vested in his widow as appointee, un-

Learned *v.* Tallmadge.

less by the deed of March 3, 1840, he had divested himself of the right to make such appointment.

Although, as we have seen, Sill was the person for whose benefit the property was intended, yet, in fact, he never had any beneficial interest in it. The title was vested in the trustees during his life for the use of his wife and children. It was only in case he survived his wife and all his children that he was entitled to any thing at the hands of the trustees. It is true the trustees were authorized to cut down and sell wood and timber, and upon doing so they were required to pay over to Sill the proceeds. But it was discretionary with the trustees whether they would act upon this authority. It gave to Sill no beneficial interest in the land. He was, therefore, a stranger to the title, having no legal or equitable interest in it. The contingency upon which he would have become a *cestui que trust* never happened, for his wife survived him.

Such a power belongs to that class which has been denominated powers *simply collateral.* It is a peculiarity of this class of powers, that they can neither be barred nor extinguished by any act of the party in whom they are vested. Nor would the case be different, if it were conceded that Sill had an interest in the land as *cestui que trust.* The power would still be *collateral.*

A case quite analogous to this, in most of its features, is found in *Reid* v. *Shergold,* (10 *Ves. jun.* 370.) An uncle had devised to two trustees a certain estate in trust for the separate use of his niece, Mrs. Stables, for life, with power to her to dispose of the estate *by will,* and in default of the execution of the power, the estate was to pass under a residuary devise in the will. One of the trustees, only, accepted the trust, and he afterwards surrendered the estate to Mrs. Stables. Thus she became entitled to the legal estate subject to the trusts specified in the will. Having the legal estate, and the entire beneficial interest for life, with authority to appoint to whom the remainder should go, she made a will, which had it remained unrevoked, would have been a good execution of the

power.    Afterwards, in consideration of an annuity, she trans-
ferred the estate to a purchaser.    It was held that the trans-
fer, though invalid as a conveyance, amounted to a revocation
of the will, and the power being in fact unexecuted, the estate
passed to the residuary devisee.    The lord chancellor, in de-
ciding the case, said, " The meaning of the testator was this :
he was providing anxiously, in every part of his will, that his
niece should have the power of receiving the rents and profits,
from time to time, for her separate use, tying up her hands
from indulging her inclination against herself.    He studiously
confines her power of giving the premises, to a power of *giv-
ing by will,* a power in its nature revocable, in every period of
life—the power given in that way to protect her against her
own act.    She had nothing *in point of interest,* but for her
life.    In *point of authority* she might, by her will, have made
a disposition to take effect after death.    The testator intended
that she should give *by will* or *not at all,* and *it is impossible
to hold* that the execution of an instrument or deed, which, if
it availed to any purpose, must avail to the destruction of that
power which the testator meant should remain capable of ex-
ecution to the moment of her death, can be considered in equity
an attempt in or towards the execution of the power.    That
therefore will not do."    *(See also* 1 *Story's Eq. Jur.* §§ 97,
173 ; *Chance on Powers,* § 2877.)*

The sale by the donee of the power, in *Reid* v. *Shergold,*
after she had made her will executing the power, was regarded
as a revocation of the will.    The power was thus left unexe-
cuted.    There is no reason to believe that, if the donee had,
subsequent to her conveyance of the estate, made another will
in execution of the power, the appointment would have failed
to take effect.    Certainly there is no intimation to this effect
in the report of the case.

If, in this case, the life estate which was vested in the
trustees had been given directly to Sill himself, the deed of
the 3d of March, 1840, would not have operated to extinguish
the power.    Such a power would be a *power in gross,* and

Learned *v.* Tallmadge.

might be extinguished by feoffment and livery of seisin. "The feoffment," says Kent, "operated upon the possession without any regard to the estate or interest of the feoffor. It had the transcendent efficacy of passing a fee by reason of the livery, and of working an actual disseisin of the freehold. It cleared away all defeasible titles, divested estates, destroyed contingent remainders, *extinguished powers*, and barred the feoffor from all future right, and possibility of right, to the land, and vested an estate of freehold in the feoffee." (4 *Kent's Com.* 481.) But this deed is a mere grant, and only operated upon the estate or interest which the grantors had in the land and might lawfully convey. It is what the common law writers technically called "*an innocent conveyance*," because it passed such interest as the party executing the grant had, and no more. A tenant for life, having a general power to dispose of the reversion by appointment, might execute a grant in fee and afterwards execute the power. But if he had conveyed by feoffment, with livery of seizin, the power would have been destroyed. "An assignment of *totum statum suum*," says Sugden, in speaking of this class of powers, "does not affect such power, because the power does not fall within the compass of his estate, but takes effect out of an interest not vested in him. And although the tenant for life assume to pass a fee, yet, if he convey by an *innocent conveyance*, as a bargain and sale, &c., the power will not be destroyed." (*Sugden on Powers*, 2d *Lond. ed.* 61.) Again the same writer says, page 62, "the cases seem to establish this general principle, that every power in gross may well be exercised, although the donee may have previously parted, by an innocent conveyance, with the estate to which it was annexed." (*See Revisers' note to the article of the Revised Statutes on powers; also,* 13 *Petersdorff Ab.* 644, *note.*)

Nor can I see how the defendant's case is improved by the covenant of Sill, that he could not and would not dispose of the premises by will. I am inclined to regard this covenant as *personal* rather than *real*. It concerned Richard Sill, who,

though not so expressed in the deed, is to be deemed the covenantee, *personally*, rather than as *owner of the land.* By virtue of the deed itself, he had acquired an estate in the land during the life of his father. He needed no such covenant as that contained in the deed to assure to him that title. The covenant was intended to operate upon the remainder which he had not yet acquired. If he and his brother should survive their father, and no will should be made in execution of the power of appointment, the remainder, by the terms of the will of Nicoll, would vest in them. Or, if he should survive both his father and brother, and no appointment be made, then the whole of the remainder would vest in him. He might be prevented from acquiring title to the remainder by the execution of the power. It was for his personal interest, therefore, that no appointment should be made, unless, indeed, it should be made in his favor.

But the defendant had no such interest. By virtue of the conveyances under which he claims, he had acquired an estate during the life of John L. Sill. The remainder must either pass to the heirs at law of Francis Nicoll, both the sons of John L. Sill being dead, and there being no devisee to take, or it must pass to a devisee to be appointed by John L. Sill. In which of these ways the title to the remainder should pass, was a question which did not concern the defendant. In neither event would it come to him. As the owner of a life estate in the land, therefore, the covenant of John L. Sill with his son that he would not exercise the power of appointment, did not affect the defendant. He was not, in any respect, injured by its breach. If the covenant had been to execute the power of appointment in favor of Richard Sill, his heirs and assigns, very different questions might have been presented.

It is insisted on the part of the defense, that Mrs. Sill, having executed the deed of the 3d of March, 1840, is estopped from taking under the will of her husband. At the time she executed the deed, Mrs. Sill had the entire beneficial interest in the land during the joint lives of herself and her husband.

The effect of the execution of the deed, by her, if indeed, it had any validity, was to release to the grantee all the interest she then had in the land. The deed contained no covenants for the future. Indeed, being a *feme covert*, she was incapable of doing more than to release her present interest. There was nothing which rendered her incompetent to take the remainder of the estate by appointment, if such appointment could legally be made, and that it could, we have already seen.

The act of the legislature passed in 1852, (*Sess. Laws of* 1852, *ch.* 322,) can have no effect upon the questions now under consideration. It had been declared by law, that where the trust is expressed in the instrument creating the estate, every sale, conveyance or other act of the trustees, in contravention of the trust, shall be absolutely void; and, again, that no person beneficially interested in a trust for the receipt of the rents and profits of lands, can assign or in any manner dispose of such interest. (1 *R. S.* 730, §§ 63, 65.) In view of these provisions, the validity of the deed of March 3, 1840, might well be doubted. At the time the act of 1852 was passed, the interest which Richard Sill took under the deed of March 3, 1840, whatever it was, had become vested in the defendant in this action. His object in procuring the passage of the act is apparent. He desired, if possible, to supply the obvious defect in his title, arising from the want of power in the trustees and those beneficially interested in the trust, to convey. For this purpose the legislature were induced to declare that the conveyance of March 3, 1840, should be as valid and effectual as if the trustees and parties of the second part had been previously and duly authorized to sell and convey. The object of the act, undoubtedly, was to prevent, if legislation could do it, the deed to Richard Sill from being declared void under the provisions of the revised statutes, to which I have referred. Whether it could have even that effect is a question which I need not now determine. It is certain, that it could not have the effect to vest in the grantee

any greater·title or interest in the land than the grantors then had.

One other question remains to be considered—the question of adverse possession. The defendant insists that the conveyances under which the plaintiff claims title are void, because at the time they were delivered he, the defendant, was in actual possession of the premises, claiming under a title adverse to that of the grantors in these conveyances. (1 *R. S.* 739, § 147.) I do not think this position can be sustained. The defendant entered under a title which, at the most, gave him an estate in the land during the life of John L. Sill. Upon the death of the latter the defendant's term expired, and he then became a tenant by sufferance. This tenancy did not expire until one month after notice to quit had been served by the owner of the reversion. At the time of the conveyances from Mrs. Sill to Noyes, and from Noyes to the plaintiff, therefore, though in· actual possession of the premises claiming title, the defendant did not claim under a title adverse to the title of the grantors in these conveyances. The *claim* of the defendant was adverse to that of Mrs. Sill and those deriving title from her. It was so, because the defendant misapprehended the effect of the conveyance under which he claimed to hold the premises. The title under which the defendant claimed was not, in fact, adverse to the plaintiff's title. The defendant had entered under a conveyance of an estate for the life of another. His estate ceased with that life. He then, being lawfully in possession, became the tenant by sufferance of the person entitled to the reversion, who turns out to be Mrs. Sill. When the conveyances in question were made, therefore, the defendant, whatever may have been his claim, was, in fact, the tenant, first of Mrs. Sill and then of her grantee. The title under which he claimed was not adverse to the title under which the plaintiff now claims. The conveyances, therefore, cannot be avoided upon this ground.

I have thus examined all the grounds of defense which were presented upon the trial of this action. I have bestowed upon

the case a much greater amount of attention than is usually devoted to a trial at the circuit, for the reason that the questions involved are important, and some of them, to me at least, novel, and having been fully and well argued on both sides, it was the mutual request of the parties, at the trial, that the decision should be made upon a full examination of these questions. That examination has led me to the conclusion that the plaintiff is entitled to judgment.

[Albany Special Term, October 6, 1856. *Harris,* Justice.]