Bradley, J.
The liability of the Grand Lodge to pay the sum mentioned in the certificate has been recognized by it, and the amount has been, pursuant to the order of the court, paid into court to the credit of this, and another action commenced by Phinney against it. The only question for determination now is, which of the two persons, the plaintiff, and the defendant Phinney, is entitled to the money.
The plaintiff contends that she acquired a right as the beneficiary which was not defeated by the subsequent surrender of the certificate and the issuance of the new one, naming the defendant Phinney as such beneficiary. The statute declares the objects of the corporations to be created under it, amongst which are, to create, hold and disburse a beneficiary fund for the relief of members and their families. And it provides that such beneficiary fund “may be set apart and provided to be paid over to the families, heirs or representatives of deceased or disabled members, or to such person or persons as such deceased member may wKile living have directed.” Laws 1877, chap. 74, § 4. And power is given to such corporation to make such by-laws, *154 rules and regulations as may be deemed proper. Id., §§ 4, 5.
Amongst the by-laws of the corporation in force in 1879, was one providing that “any member holding a beneficiary certificate, desiring at any time to make a new direction as to its payment, may do so by authorizing such change, in writing, on the back of his certificate, in the form prescribed,” etc. And in 1883, this by-law was amended, but not modified in any particular, requiring consideration here. The manner and form prescribed for making the direction for a new certificate, and to produce its issue, were observed and adopted by the member Sabin. The inquiry here, therefore, is whether or not he had the right to effectually cause the new certificate to issue, and thus name the defendant Phinney as the beneficiary. The statute and the by-laws, pursuant and subject to which the certificates were issued, were part of the contract between the corporation and the member Sabin, and such contract was executory. Hellenberg v. Dist. No. One of I. O. of B. B., 94 N. Y., 580; Bown v. Catholic Mut. Benefit Asso., 33 Hun, 263.
It was within the agreement as made between the member and the lodge that he might at any time while remaining in good standing as such, make a new direction as to the payment, and obtain a certificate accordingly. This he did do, and pursuant to his direction a new certificate was issued and Phinney was named as the beneficiary.
This was within the terms of the contract, unless Phinney was ineligible to become such by reason of the want of some relationship to the member or of some interest in his life. He was no relative of Sabin. This is urged as an objection going to the validity of the certificate for his benefit, on two grounds: First, that a family relation is requisite within the meaning of the statute to qualify a person to become a beneficiary; and second, that not being such, and having no interest in the life of the member, the certificate as to him has the nature of a wager policy, and is void, and that the relation of the plaintiff as the beneficiary remained effectual to support her right to the fund.
While aid, and after death of members, pecuniary benefit to their families, by payment from the beneficiary fund, are within the purposes of the statute, the right of direction for payment does not seem to be confined to that, or in any manner restricted in respect to the person whom the member may designate as the ultimate recipient of the fund which the corporation may be required to pay by virtue of the certificate issued to him as member.
The statute provides for payment to “such person or persons” as he shall while living have directed. This *155 power, as furnished by the statute, is not qualified by the terms of the statute. The first objection is therefore not supported. Massey v. Mutual Relief Society, 34 Hun, 254; affirmed, 5 East. Rep., 810.
The question of policy in this respect is legislative and some statutes providing for the creation of societies for like purposes, and defining their powers, have applied the restriction urged here. The inquiry now is one of construction, and not for the wisdom or propriety of a statute.
The cases founded upon other and different enactments do not necessarily furnish much aid in the interpretation of that in question.
It is difficult to see support for the contention that the certificate made on the new direction has the nature or effect of a wager policy within the rule declared by the courts of this state, as it was made upon the request of the member and pursuant to the existing agreement between him and the Lodge. Olmsted v. Keyes, 85 N. Y., 593.
There is some conflict of authority on this subject, and the views of the Supreme Court of the United States, and of some of the states, are not in harmony with those of the courts of this state. Cammack v. Lewis, 15 Wall., 643; Warnock v. Davis, 104 U. S.-, 775.
The circumstances which led to the new direction and certificate were that Sabin and his wife had separated, and he had concluded, and expressed his purpose to Phinney, to discontinue the payment of his dues and assessments as a member of the order. He said he would like to remain a member, but would not make any further payments. Phinney proposed to make the payments for him, and take the relation of beneficiary if Sabin would assign the policy to him, which Sabin, with apparent satisfaction, promised to do, and soon after sent to him the certificate, with the requisite direction endorsed upon it for the new certificate, which, on the surrender of the old one so indorsed, was issued. The referee has found, and his conclusion is supported by the evidence, that this agreement was made in good faith by Phinney. The then existing agreement between the member and the lodge, pursuant to which the first certificate and the modification of it, or the new one, were made, was valid, and the latter having been issued by his direction, did not come within the meaning or objection of a wager policy.
It is further contended by the learned counsel for the plaintiff: First, That the delivery of the certificate to her, and the acceptance of it by her, vested in the plaintiff a right to the fund on his death, and second, that her right was supported by a consideration which denied to Sabin the power to revoke the certificate or to defeat her relation *156 and right as the beneficiary. She testified to the effect and the referee has found that the first certificate was by Sabin delivered to her, and she received and put it into her box. And about three weeks after he requested her to take a certificate from the Bath Mutual Endowment Company for his benefit, and that he would pay the assessments on both, that she did so. She also says that after her separation from her husband in May, 1883, and during his life she surrendered up her certificate of the Bath Company and took a new one making her personal representative the beneficiary, and that the certificate which her husband had delivered to her, was by him taken from her box, without her knowledge or consent, and that she was not advised that he had taken it, or that it had been surrendered, or the new one issued until after his death.
It may be observed that Sabin had no interest and could take none in the fund mentioned in a certificate issued to him by the grand lodge; that his power was that of designation or appointment merely, and the executory character of the agreement with him, as a member, was such that the payment to be made after his death, was dependent not upon any other than the latest direction that he should in due manner have made by way of appointment and designation of the beneficiary. Hellenberg v. District No. 1, I. O. B. B., 94 N. Y., 580; Greeno v. Greeno, 23 Hun, 478; Brown v. Catholic Mutual Benefit Association, 33 id., 263; Deady v. B. C. Mutual Benefit Association, 17 J. & S., 246; American Legion of Honor v. Perry, 140 Mass., 580. The certificate is not a chose in action like an ordinary policy of insurance of life or property, in which right of property may vest; but it is subject to the terms of the executory contract in which it vests, and to the modification in the particular respect, which the member in the manner prescribed may direct and require to be made. The certificate is not therefore an executed contract during the life of the member in the sense required to make it an effectual promise to him for the benefit of another within the principle of Lawrence v. Fox (20 N. Y., 268).
By the mere act of- delivery to and acceptance by the plaintiff of the certificate, she acquired no interest in, or right to the fund, or in the instrument as an undertaking of the Grand lodge during Sabin’s life. And assuming that the facts proved and found constituted a mutual arrangement between the plaintiff and her husband to the effect that their respective certificates should be continued operative for the benefit of the survivor of them, and furnished a consideration to support it, the question arises whether her right to the fund is established.
The power of appointment was not taken away from *157 him, because that was in the contract between him and the lodge, although the exercise of it may have been in violation of his arrangement with his wife. It was one of the elements of the agreement under which the certificate was issued, that this power should continue during the life of the member, provided he remained in good standing as such, which was the situation of Sabin. And such continuance of the power, and its observance was evidently within, and part of the co-operative policy of the organization and of the statute providing for it. Its beneficent purposes had in view the exercise of this power as the circumstances in the judgment of the member might seem to require. He may be capricious and unreasonable, and the member may have been so in this instance; but that is not a reason for refusal to recognize the force of the rule, or the wisdom of leaving this exercise of power of appointment to the judgment of the members. The various changes during life of the relations which they may assume, and have to others, may furnish very suitable reasons for changes of the beneficiaries named in their certificates. This executory power is derived from the organization, and is vested in them by the statute and the by-laws, and the member can in no manner other than that prescribed control the disposition of the fund. It would seem to follow that the liability of the grand lodge to pay after the death of its member is upon the certificate last issued by it upon his direction, given in the manner prescribed. And that it can be required to recognize in this case, as its subsisting contract, no other than the certificate in which Phinney is named as the beneficiary.
That alone became the executed undertaking of the corporation on the death of Sabin, as the direction which produced that certificate was the exercise of the power upon which the right to payment was by the statute and by-laws made to depend. And such certificate represented the only executed agreement of the lodge to pay arising out of the relation of Sabin as a member and upon his direction for disposition of the fund. If he failed to observe and keep his agreement with his wife, the breach was that of a per-r sonal undertaking on his part without defeating the operation and legal effect of the power of appointment. Learned v. Tallmadge, 26 Barb., 443. It is not important here to inquire whether he could have been restrained by action from exercising the power. It was executory and he executed it. We do not now see how the plaintiff acquired any property, right or interest in the fund, or in the undertaking to pay of the grand lodge, to enable her to charge Phinney as trustee in her behalf. But whatever view may be taken of that question there must be a new *158 trial. If she acquired no right by agreement with her husband she has no foundation for her claim made upon the fund. And if she could by arrangement with him acquire such right it would necessarily rest for support upon an interest, or title derived from, through or under him. And the defendant Phinney might seek to support his claim to the fund in the same manner. The plaintiff in her own behalf testified to personal transactions and communications between herself and husband in respect to the delivery of the certificate by him to her, and in relation to the understanding that she should procure a beneficiary certificate in his behalf, and 'that he should pay the assessments on both. This constitutes the arrangement upon which reliance is placed to some extent in support of her claim.
This evidence given by her was taken under the objection and exceptions of the defendants. The defendant Phinney was then called as a witness for the plaintiff, and testified in effect to an arrangement between Sabin and himself, by which it was agreed that the latter should take the place of beneficiary and pay the dues and assessments, and thus enable Sabin to retain his membership without expense. And that he fully performed his agreement and paid the dues and assessments, amounting to $9.75. And after this evidence was introduced, the defendants renewed their objection to the evidence of the plaintiff, relating to her personal communications and transactions with her husband, by; motion to strike it out on the ground before taken, that it involved her personal transactions with him, and was incompetent under sec. 829 of the Code of Civil Procedure, and to the refusal to grant her motion, exception was taken. The referee found the facts substantially as testified to by Phinney in respect to his arrangement with Sabin, and that he made it in good faith. And it is evident that the referee gave effect to the evidence of the plaintiff in respect to her personal transactions and communications with her husband, who was deceased at the time of the trial.
This evidence of the plaintiff was undoubtedly received, and the motion to strike it out denied, upon the ground that the defendant, Phinney, was not an assignee of Sabin in respect to the certificate or fund, and that his interest or title claimed was not derived “from, through, or under him, by assignment or otherwise,” but that it was derived wholly from the grand lodge through the agency merely of Sabin, in the exercise of the power of designation or appointment. We do not hold that this view of the referee was error, but simply do hold that if the plaintiff could assert a right or interest derived from the, member, the defendant was in a situation to urge a like reason in support *159 of the claim made by him. And in that view her evidence of personal transactions with the deceased member was not competent to prove that her right thus derived from him was superior to that of the defendant, founded upon his agreement with the deceased.
It appears by the record that the several objections taken to evidence introduced were reserved by consent of the parties for further consideration by the referee, and by his report he held this evidence of the plaintiff competent, and gave the defendants an exception, and gave it consideration, in support of her claim, although he found that the old certificate was surrendered, and the new one made pursuant to the agreement between Sabin and the defendant Phinney, before mentioned. It was error to seek to support by her evidence the claim as one derived from agreement with her husband, as against the defendant, who also had with him an agreement which produced his relation as beneficiary expressed in the new certificate. Code Civ. Pro., § 829. These views render it unnecessary to consider any other question.
The judgment should be reversed and a new trial granted; costs of this appeal to abide the final award of costs.
Haight and Angle, JJ., concur on the last ground, without expressing any opinion on the preceding one discussed.